UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE SEBASTIANA NIEVES,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br><br>   Defendant. | Case No. 13-cv-04191-KAW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |

Plaintiff Jacqueline Sebastiana Nieves seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court denies Plaintiff's motion for summary judgment, and grants Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On March 31, 2009, Plaintiff Jacqueline Sebastiana Nieves filed a Title XVI application for Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 160-63. Plaintiff's application alleges a disability onset date of approximately July 1, 2008. AR 160. Plaintiff's claim was denied on July 2, 2009. AR 74. Plaintiff's Request for Reconsideration was denied on May 28, 2010. AR 79. A hearing was held before Administrative Law Judge Caroline H. Beers on January 18, 2012. AR 20-71. At the hearing, Plaintiff amended her alleged disability onset date to March 31, 2009, the date of her SSI application. AR 46.

Plaintiff is forty-six years old. She is unmarried and lives with housemates. AR 62. Plaintiff has not been engaged in substantial gainful activity since March 31, 2009. AR 22, 51. At

1   the hearing, Plaintiff testified that she obtained her four year college degree, but that it took her
2   seven years. AR 48.  During the past 15 years, Plaintiff has worked full-time doing clerical
3   accounting work, including data entry and filing. AR 49-50.  She left her last position because "the
4   firm went bankrupt." AR 50.
5          On June 11, 2009, Robert Bilbrey, Ph.D., performed a psychological evaluation of
6   Plaintiff. AR 322-24.  Plaintiff reported a history of mood swings, depression, and occasional
7   manic symptoms, rare sleep problems, and periods of grandiosity or pressured speech. AR 322.
8   She reported occasional suicidal ideation, but denied homicidal ideation or any history of auditory
9   or visual hallucinations. AR 322.  Plaintiff reported that she was not taking any psychiatric
10  medication at that time, but had previously taken Zoloft and Neurontin.  AR 322.  Plaintiff alleged
11  that she had symptoms of fatigue. AR 322.  On examination, Plaintiff's grooming was adequate,
12  and she was polite and cooperative, with good eye contact. AR 323. She was oriented, and
13  expressed a normal affect. *Id.*  She repeated 4 out of 4 words and recalled all of them after a five
14  minute delay. *Id.* She could spell the word "world" backwards. *Id.*  Her thought process was
15  reality based and her stream of mental activity and speech were linear and goal focused. AR 323.
16  Dr. Bilbrey diagnosed her with Depression, not otherwise specified (NOS), and fatigue. AR 324.
17  He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 80, and opined that
18  her symptoms would be expected to improve within one year if she obtained continuous mental
19  health treatment, including psychotherapy and a medication evaluation. *Id.*  Dr. Bilbrey opined
20  that Plaintiff could understand, remember and perform simple and repetitive tasks, as well as
21  detailed and complex tasks, accept instructions from supervisors, but would have some difficulty
22  interacting with coworkers and the public. *Id.*  He further noted that Plaintiff would have some
23  difficulty maintaining regular attendance in the workplace and some difficulty completing a
24  normal workday/workweek without interruptions from her psychiatric condition. *Id.*
25         On June 13, 2009, Frank Chen, M.D., performed a comprehensive internal medicine
26  evaluation. AR 327-30.  Plaintiff reported symptoms of tiredness since July 2008, body pain, on
27  and off nausea for the past two years, headaches, and allergies. AR 327.  Dr. Chen's examination
28  showed no physical abnormalities, but diagnosed "[n]onspecific symptoms of tiredness, body

aches, and nausea." AR 329.  Dr. Chen opined that Plaintiff can sit in an eight-hour workday without limitation and could lift and carry 25 pounds frequently and 50 pounds occasionally. *Id.*

On January 15, 2010, Michael Bass, M.D., performed a comprehensive neurologic evaluation. AR 365-69.  Dr. Bass reviewed limited medical records in connection with the evaluation. AR 365.  Plaintiff reported frequent nausea and mild headaches, as well as a migraine in the frontal region and the right eye. *Id.*  During her examination, Plaintiff reported that she was "low energy," and has never been enthusiastic about things. *Id.*  She admits to depression and that she sleeps much of the time. *Id.*  Plaintiff successfully remembered 3 of 3 objects after distraction and could perform simple math. AR 368.  Her answers to Dr. Bass's questions were "satisfactorily prompt." *Id.*  Dr. Bass diagnosed Plaintiff with chronic depression, possible chronic fatigue syndrome, and a possible sleep disorder. AR 368.  Despite these diagnoses, Dr. Bass did not feel that the conditions imposed any limitations for 12 continuous months, including workplace, environmental conditions. *Id.*

On January 16, 2010, Said Shefayee, M.D., performed a consultative psychiatric examination. AR 372-75.  Plaintiff maintained complaints of fatigue and depression. AR 372.  Plaintiff reported having taken various medications over the years, including Prozac, Paxil, Sinequan, and Zoloft. AR 372.  She stopped taking Zoloft because, while it improved her mood, she became manic. *Id.*  Plaintiff admitted that her noncompliance with her medication contributed to her difficulties. AR 373.  Dr. Shefayee found that Plaintiff's general appearance was appropriate, her hygiene was fair, and she had fair eye contact and was able to communicate. *Id.*  He also found her to be very sad and dysphoric. *Id.*  Dr. Shefayee diagnosed Plaintiff with major depression NOS and assigned a GAF score of 50. AR 374-75.  Dr. Shefayee stated that Plaintiff was able to manage her funds and perform simple, repetitive tasks, and could accept instructions from supervisors and get along with people in the workplace as long as she is compliant in terms of taking her medications. AR 375.

On May 27, 2010, State agency physician F. Mateus, M.D., reviewed the record and opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended

periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. AR 387-94. Dr. Mateus also found moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 388. Dr. Mateus opined that Plaintiff was limited to simple tasks, and had moderate problems with persistence and pace, social functioning, and adaptation. AR 389.

On March 10, 2010, a psychiatric assessment was completed at Sausal Creek Outpatient Stabilization Clinic by Dr. Gleul. AR 485-92. Dr. Gleul identified depressed mood, normal to pressured speech, and sad affect. AR 487. Plaintiff was diagnosed with bipolar and affective disorder (type II), and assigned Plaintiff a GAF score of 38. AR 487. She was prescribed Cymbalta and Lamictal. *Id.*

On March 18, 2010, Plaintiff was seen by Alameda County Mental Crisis Evaluation, where she received a diagnosis of mood disorder NOS, major depressive disorder, and personality disorder NOS, and was assigned a GAF score of 40. AR 535-37. She continued to obtain treatment through Alameda County Behavioral Health Care Services, and was seeing Dr. John Cotrufo, D.O., and Donald Hackett, LCSW, from March 25, 2010 to November 2010. AR 537-96. On March 25, 2010, Dr. Cotrufo assigned Plaintiff a GAF score of 50. AR 585. The notes indicate that Plaintiff was stable, but reflect no significant worsening or improvement of symptoms. *See* AR 537-96.

On November 9, 2011, Farrell Barnett, M.D., completed an assessment of Plaintiff's ability to do work-related activities. AR 494-96. Dr. Barnett opined that Plaintiff had a "poor" ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, and maintain attention/concentration. AR 495. She also had "poor" ability to understand, remember and carry out complex job instructions, maintain personal appearance, and relate predictably in social situations. AR 495-96. Dr. Barnett indicated that Plaintiff had a "fair" ability to follow work rules, use judgment, function independently, behave in an emotionally stable manner, demonstrate reliability, and understand, remember, and carry out simple job instructions.

4

1   AR 495-96.

2   In a February 2, 2012 decision, the ALJ found that Plaintiff was not disabled. AR 20-30.
3   On February 14, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision.
4   AR 15-16. The ALJ's decision became the final decision of the Commissioner when the
5   Appeals Council denied review on July 8, 2013. AR 1-6. Plaintiff now seeks judicial review of
6   the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

7   On January 21, 2014, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt.
8   No. 13.). On February 15, 2014, Defendant filed its opposition and cross-motion for summary
9   judgment. (Def.'s Opp'n, Dkt. No. 14.) Plaintiff filed an untimely reply on March 6, 2014,
10  which the Court will consider since she is proceeding pro se. (Pl.'s Reply, Dkt. No. 15.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at

5

721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R.  § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the date of her application. AR 22. At step two, the ALJ found that Plaintiff's severe impairments were bipolar disorder and depression. AR 22. At step three, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 23-24. The ALJ based this finding on Plaintiff having only moderate restrictions in daily living, and moderate difficulties in concentration and social functioning. AR 23. These difficulties were not tantamount to the marked restrictions or repeated episodes of decompensation required to satisfy step three. *Id*.

At step four, the ALJ concluded that Plaintiff has the RFC to perform "a full range of work at all exertional levels," including simple tasks, simple work-related decisions with few workplace changes, and maintain occasional interact with the public and coworkers. AR 24-28. The ALJ found that Plaintiff was doing well in school until she enrolled in a master's degree problem. AR

6

27. Despite a longstanding history of depression dating back to 1986, Plaintiff was able to successfully complete an undergraduate program prior to her alleged onset date. *Id.* Further, while she complains of fatigue, there is no physical diagnosis for those symptoms. *Id.* Plaintiff watches television most of the day, reads a lot, goes to the store several times per week and uses the computer sometimes all day. *Id.* The ALJ found that the records show that Plaintiff "is stable with medication but that she has had issues with compliance." AR 28. "In essence, when she takes her medications, she does well and can function to the point that she can perform college level work in molecular biology." *Id.*

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work, because the demands of her past relevant work exceed her residual functional capacity. AR 28.

Plaintiff was born in 1968, and was 40 years old on the date the application was filed, which is defined as a younger individual age 18-49. AR 28. She has at least a high school education and is able to communicate in English. *Id.* Transferability of job skills was not material because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id.* Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 28-30. Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. AR 30.

## IV. DISCUSSION

Plaintiff makes three arguments in her motion for summary judgment: (1) that the ALJ rejected the opinions of Plaintiff's treating sources without clear and convincing or specific and legitimate reasons; (2) that the ALJ mischaracterized Plaintiff's testimony regarding her medication and its effect on her; and (3) that the ALJ did not consider all of the vocational expert's testimony. (*See* Pl.'s Mot. at 1-5.)

The Court will address each argument in the order of the five-step evaluation. There is no dispute that Plaintiff is not currently engaged in a substantial gainful activity, and so the analysis proceeds to step two to determine whether she is disabled.

### A. ALJ gave proper credit to treating sources' opinion.

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-diagnoses, on what they call "Axes." *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013). Axis V measures the Global Assessment of Functioning ("GAF"). *Id.* The GAF is a scale ranging from zero to 100, used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health. *Id.* The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009). A GAF score may help an ALJ assess mental residual functional capacity, but is not raw medical data. People with a GAF score of 41 to 50 have "serious symptoms" or any serious impairment in social, occupational or school functioning. *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning." *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational or school functioning but generally

functioning well with some meaningful interpersonal relationships. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).

### 1. Alameda County Behavioral Health Services

Plaintiff argues that the ALJ should have given greater weight to the medical records from Alameda County Behavioral Health Services, and not dismissed the low GAF scores as inconsistent with the observations made by other medical examiners. (Pl.'s Mot. at 2-3.) Plaintiff contends that this was her primary treating source from March 2001 through November 2010, including the nine month period from March 2010 to November 2010. (Pl.'s Mot. at 2.) During that nine month period, she saw Dr. Cotrufo seven times and Mr. Hackett twelve times in person, and an additional seven times by telephone. *Id.* On March 25, 2010, Dr. Cotrufo assigned Plaintiff a GAF score of 50. AR 585. On November 4, 2010, however, Dr. Cotrufo opined that "Pt. not suited for regimented, mainstream economy because she cannot emotionally handle routines," and assigned her a GAF score of 40. AR 595.

As an initial matter, whether a claimant is disabled is an administrative, rather than a medical, finding that is reserved for the ALJ. See 20 C.F.R. § 416.927(e); SSR 96-5p ("issues [that] are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings" include "[w]hether an individual is 'disabled' under the Act"). The source of any opinion, medical or otherwise, is not entitled to "any special significance." SSR 96-5p ("treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Accordingly, the ALJ is not bound by Dr. Cotrufo's assessment. The Court notes that Plaintiff concedes this point in her reply. (Pl.'s Reply at 3.)

When weighing the medical evidence as part of assessing the claimant's testimony regarding the severity of her impairments, the ALJ gave both Sausal Creek's (38) and Dr. Cotrufo's November 4, 2010 (40) GAF scores less weight than other opinions, because the ALJ concluded that "the scores are not consistent with the observations made by the physical and

9

mental consultative examiners. AR 28, AR 535-96. On March 10, 2010, the Sausal Creek records describe Plaintiff as requiring routine mental health services and only having some distress. *Id.* Further, the mental status exam showed normal sensorium, orientation, relatedness, grooming, insight, judgment, thought process, and thought content. AR 28. Plaintiff only exhibited sad affect, depressed mood, normal to pressured speech, and was hyperverbal. *Id.* The March 25, 2010, progress notes state that she was conversant, intellectualized, and relatively nonchalant given her ongoing complaints and disconnect from the mainstream economy. *Id.*

Additionally, other medical evidence was not consistent with Dr. Cotrufo's assessment. In accessing Plaintiff's residual functional capacity, the ALJ gave the greatest weight to the opinions of Dr. Chen and Dr. Bass based on their examining relationship, and because their opinions are consistent and supported by the underlying treatment notes. AR 27. Dr. Chen opined that Plaintiff had no physical abnormalities, and could, despite "[n]onspecific symptoms of tiredness, body aches, and nausea," lift and carry 25 pounds frequently and 50 pounds occasionally. AR 329. Dr. Bass performed a comprehensive neurologic evaluation, and diagnosed Plaintiff with chronic depression, possible chronic fatigue syndrome, and a possible sleep disorder. AR 368. Despite these diagnoses, Dr. Bass did not feel that the conditions imposed any limitations for 12 continuous months, including workplace, environmental conditions. *Id.* Dr. Shefayee performed a psychiatric examination and diagnosed Plaintiff with major depression NOS and assigned a GAF score of 50. AR 26, 375. Dr. Shefayee opined that Plaintiff's ability to accept instructions from supervisors and get along with people in the workplace should be intact if she takes her medication regularly. AR 375. Similarly, Dr. Mateus opined Plaintiff could perform simple tasks and had moderate limitations with persistence and pace, social functioning, and adaptation. AR 26, 389. The ALJ gave weight to Dr. Mateus' opinion because it was consistent with Dr. Shafayee's opinion and the overall record. *See Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). The ALJ gave less weight to Dr. Bilbrey's opinions, because he only administered a mental status exam, and did not perform any psychological testing. AR 27. The ALJ assigned no weight to Dr.

Barnett's opinion because it was not supported by the underlying treatment records or her activities of daily living, and his statement consisted of a check box form. AR 27, 494-96.

Additionally, the ALJ considered Plaintiff's statements and testimony. AR 23, 26. At the hearing, Plaintiff testified that she had difficulty taking care of her hygiene, but that she shopped in stores such as Safeway, Target, and Smart and Final, and visited her mother. AR 23, 53, 58-60. Plaintiff provided that she sometimes spent up to eight or ten hours a day on the Internet, reading and writing comments to people on blogs, and went out to eat with her mom or a group of friends about once per month. AR 23, 60, 237. Plaintiff reported to the agency that she prepared simple meals, washed laundry, and used public transportation. AR 207. Based on the above statements, the ALJ reasonably found that Plaintiff's self-reported activities showed she "remain[ed] quite functional." AR 23. Plaintiff's contention that she could not properly care for her hygiene was contradicted by other evidence in the record, including the observations of three consultative examiners. AR 27, 324, 366, 374.

Thus, the Court finds that the ALJ had reason to discount the medical records from the Alameda County Behavioral Health Services, including the GAF scores assigned to Plaintiff by its providers.

### B. ALJ did not mischaracterize Plaintiff's testimony regarding her medication

Plaintiff contends that the ALJ did not properly consider her ability to function when she was compliant with medication. (Pl.'s Mot. at 1-2, 4.) Plaintiff argues that she is not stable with medication, even when taken regularly, as evidenced by her difficulties being on time for her classes despite her compliance. (Pl.'s Mot. at 4.)

At the hearing, Plaintiff testified that she resumed taking medication regularly in March 2010. AR 54. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). The ALJ asked Plaintiff if medications helped her symptoms when she took them, and Plaintiff admitted that medication improved her symptoms, and she is able to shop for

11

groceries, perform some chores, and get along better with her housemates. AR 25, 55.

Plaintiff's belief that she in unable to function while on medication is undermined by the medical evidence. Dr. Shafayee concluded that Plaintiff could perform simple, repetitive work as long as she was compliant with her medication. AR 26, 375. Further, in August 2010, after five months of taking her medication, Plaintiff was functioning well enough that Mr. Hackett, her social worker, suggested that she consider looking for work. AR 556. According to the treatment notes, this suggestion was not well received by Plaintiff. *Id.* The ALJ acknowledged that while Plaintiff is unable to perform any past relevant work, unskilled positions exist in significant numbers in the national economy that are within her abilities. AR 28. Accordingly, the ALJ reasonably found that medication improved Plaintiff's symptoms and she retained the capacity to work.

### C. The ALJ properly considered the Vocational Expert's testimony

Plaintiff argues that the ALJ erred by relying on vocational expert ("VE") testimony based on a hypothetical that did not include all of Plaintiff's limitations to find that Plaintiff was not disabled. (Pl.'s Mot. at 3-4.)

After finding that Plaintiff had the residual functional capacity to perform a full range of work at step four of the sequential disability analysis, the burden shifted to the ALJ to demonstrate that Plaintiff is not disabled and can engage in work that exists in significant numbers in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The ALJ may meet this burden at step five by "asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all of the claimant's limitations, both physical and mental, supported by the record." *Id.*

If the ALJ's question to a VE fails to include all of the impairments from which the claimant suffers, then the expert's testimony cannot constitute substantial evidence upon which to base a conclusion that the claimant is not entitled to benefits. *Id.* at 1162. The ALJ's RFC included that Plaintiff could only "perform simple and repetitive tasks" and make simple, work-related decisions with occasional workplace chances, and maintain occasional contact and interaction with coworkers and the public. AR 65-66. The VE responded that such positions

1    existed, including that of a janitor and laundry worker. *Id.* The ALJ then asked for two examples

2    of sedentary positions, and the VE responded that the positions of small products assembler and

3    officer helper were available in the national economy and in the San Francisco Bay Area. AR 67.

4    Then the ALJ asked the VE to exclude phone contact, and the VE responded that a jewelry stone

5    setter was an example.

6          The ALJ posed a second hypothetical, which assumed everything in the first hypothetical,

7    but assumed only superficial contact with the public and coworkers and occasional interaction

8    with her supervisor. AR 68-69. The VE responded that anything less than frequent contact with a

9    supervisor precluded employment, because unskilled workers have frequent contact with

10   supervisors. AR 69.

11         At the hearing, Plaintiff's advocate asked the VE whether any of those positions would "be

12   able to accommodate four days of absenteeism in an average month on an ongoing basis." AR 69.

13   The VE responded that four days of absenteeism would preclude all employment. *Id.*

14         The ALJ reasonably declined to accept this limitation because it was not supported by the

15   record. First, there is no indication in the record that Plaintiff would miss that many days of work

16   per month nor does Plaintiff explain where four days came from. Her prior employment

17   evaluations indicate some tardiness, and Plaintiff reported having difficulty getting to places on

18   time, including when it came to her school attendance. *See* AR 599, 602-04, 608. These

19   employment evaluations, however, are from before Plaintiff started taking her medication

20   regularly, as they are from 1996 to 1999. Further, Plaintiff left her last job because the firm went

21   bankrupt, not because she was fired. AR 50, 184. Also, while Dr. Bilbery opined that she "would

22   have some difficulty maintaining regular attendance," that does not mean that she would have

23   frequent absences.

24         In her reply, Plaintiff concedes that she showed up on time and behaved reasonably at the

25   three consultative exams. (Pl.'s Reply at 4.) She states that this is because they were all in the

26   afternoon or evening, each was the only thing she had to get done on that day, and because she

27   knew the importance of the exams to her case. *Id.* As a result, absent additional evidence, Plaintiff

28   has not met her burden to show that she was more limited, and the ALJ was not required to

include limitations for additional social restrictions or absenteeism in the hypothetical to the VE. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) ("ALJ, though, 'is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence'").

Thus, the RFC used in the hypothetical included all of Plaintiff's established limitations, and the VE's testimony supports the ALJ's non-disability finding.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED. The Clerk shall close the case.

IT IS SO ORDERED.

Dated: January 12, 2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge